David J. Groesbeck
WSBA No. 24749
David J. Groesbeck, P.S.
1716 Sylvester St. SW
Olympia, Washington 98501
Tel.: 509-747-2800
Fax: 509-747-2828
Email: david@groesbecklaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

### AT SEATTLE

PARLER LLC,

               Plaintiff,

    v.

AMAZON WEB SERVICES, INC.,

               Defendant

No. _____

**VERIFIED COMPLAINT**

**(JURY DEMAND REQUESTED)**

VERIFIED COMPLAINT - 1

David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

Plaintiff Parler LLC ("Parler"), by its undersigned counsel, alleges, and by its Chief Operating Officer, verifies, as follows:

## NATURE OF THE ACTION

1.      This is a civil action for injunctive relief, including a temporary restraining order and preliminary injunctive relief, and damages.  Last Month, Defendant Amazon Web Services, Inc. ("AWS") and the popular social media platform Twitter signed a multi-year deal so that AWS could support the daily delivery of millions of tweets. AWS currently provides that same service to Parler, a conservative microblogging alternative and competitor to Twitter.

2.      When Twitter announced two evenings ago that it was permanently banning President Trump from its platform, conservative users began to flee Twitter en masse for Parler. The exodus was so large that the next day, yesterday, Parler became the number one free app downloaded from Apple's App Store.

3.      Yet last evening, AWS announced that it would suspend Parler's account effective Sunday, January 10th, at 11:59 PM PST. And it stated the reason for the suspension was that AWS was not confident Parler could properly police its platform regarding content that encourages or incites violence against others. However, Friday night one of the top trending tweets on Twitter was "Hang Mike Pence." But AWS has no plans nor has it made any threats to suspend Twitter's account.

VERIFIED COMPLAINT - 2



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

4.      AWS's decision to effectively terminate Parler's account is apparently motivated by political animus. It is also apparently designed to reduce competition in the microblogging services market to the benefit of Twitter.

5.      Thus, AWS is violating Section 1 of the Sherman Antitrust Act in combination with Defendant Twitter. AWS is also breaching it contract with Parler, which requires AWS to provide Parler with a thirty-day notice before terminating service, rather than the less than thirty-hour notice AWS actually provided. Finally, AWS is committing intentional interference with prospective economic advantage given the millions of users expected to sign up in the near future.

6.      This emergency suit seeks a Temporary Restraining Order against Defendant Amazon Web Services to prevent it from shutting down Parler's account at the end of today. Doing so is the equivalent of pulling the plug on a hospital patient on life support. It will kill Parler's business—at the very time it is set to skyrocket.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Parler's federal antitrust claims under 28 U.S.C. §§ 1331 and 1337, as well as under 15 U.S.C. § 26. The Court has supplemental jurisdiction over Parler's state law claims under 28 U.S.C. § 1367.

VERIFIED COMPLAINT - 3



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

8.      This Court has personal jurisdiction over AWS as it is headquartered in the District. Also, AWS has engaged in sufficient minimum contacts with the United States and has purposefully availed itself of the benefits and protections of both United States and Washington law such that exercise of jurisdiction over AWS would comport with due process requirements.

9.      Venue lies in this District under 28 U.S.C. § 1391(b) because AWS maintains its principal place of business in the State of Washington and in this District, and because a substantial part of the events giving rise to Parler's claims occurred in this District. Personal jurisdiction and venue may also be deemed proper under 15 U.S.C. § 22, because AWS may be found in or transacts business in this District.

## PARTIES

10.      Plaintiff Parler LLC is a Nevada limited liability corporation with its principal place of business in Henderson, Nevada. Parler is "the solution to problems that have surfaced in recent years due to changes in Big Tech policy influenced by various special-interest groups." *Our Company*, https://company.parler.com. Thus, "Parler is built upon a foundation of respect for privacy and personal data, free speech, free markets, and ethical, transparent corporate policy." *Id.*

VERIFIED COMPLAINT - 4



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

11.    Defendant Amazon Web Services, Inc., an Amazon.com, Inc. company, is a Delaware corporation with its principal place of business in Seattle, Washington. AWS is the world's leading cloud service providers, capturing a third of the global market. *See* Global Cloud Infrastructure Market Q3 2020, https://www.canalys.com/newsroom/worldwide-cloud-market-q320. This is almost double the next largest competitor, and equal to the next three largest competitors combined. *Id*. AWS generates tens of billions of dollars in revenue annually. *Id*.

12.    According to its own press release, "[f]or 14 years, [AWS] has been the world's most comprehensive and broadly adopted cloud platform." *Twitter Selects AWS as Strategic Provider to Serve Timelines*, Press Center, Amazon, (Dec. 15, 2020), https://press.aboutamazon.com/news-releases/news-release-details/twitter-selects-aws-strategic-provider-serve-timelines. That is why "[m]illions of customers—including the fastest-growing startups, largest enterprises, and leading government agencies—trust AWS to power their infrastructure, become more agile, and lower costs." *Id*. In short, AWS is the Rolls Royce of cloud platform providers.

## FACTS

13.    Parler contracts with AWS to provide the cloud computing services Parler needs for its apps and website to function on the internet. Further, that both the apps and the website are written to work with AWS's technology. To have to switch to a different service provider would require rewriting that code, meaning

VERIFIED COMPLAINT - 5



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

Parler will be offline for a financially devastating period.

14.     Parler is also a competitor of Twitter as both provide a similar platform for users to communicate with short messages, links, and pictures. Like many social media platforms, Parler's business model is not based on subscription fees.

15.     Less than a month ago, AWS announced with a press release a new multi-year deal with Twitter. AWS will "provide global cloud infrastructure to deliver Twitter timelines." *Twitter Selects AWS as Strategic Provider to Serve Timelines*, Press Center, Amazon, (Dec. 15, 2020), https://press.aboutamazon.com/news-releases/news-release-details/twitter-selects-aws-strategic-provider-serve-timelines.

16.     According to the deal, "Twitter will leverage AWS's proven infrastructure and portfolio of services to support delivery of millions of daily Tweets." *Id.* Further, "[t]his expansion onto AWS marks the first time that Twitter is leveraging the public cloud to scale their real-time service." *Id.* This deal "buil[t] on the companies' more than decade-long collaboration, where AWS continues to provide Twitter with storage, compute, database, and content delivery services to support its distribution of images, videos and ad content." *Id.* What is more, together "Twitter and AWS will create an architecture that extends Twitter's on-

VERIFIED COMPLAINT - 6



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

premises infrastructure to enable them to seamlessly run and scale the real-time service globally, increase its reliability . . ., and rapidly move new features into production around the world." *Id.*

17.     At the same time, Parler began to significantly increase its usership at the expense of Twitter. After the election in November, the New York Times reported that "millions have migrated to alternative social media and media sites like Parler . . . ." Mike Isaac & Kellen Browning, *Fact-Checked on Facebook and Twitter, Some Conservatives Switch Their Apps*, NY Times (Nov. 18, 2020), https://www.nytimes.com/2020/11/11/technology/parler-rumble-newsmax.html. In fact, less than a week after Election Day, between November 3rd and November 8th, Parler's app experienced nearly one million downloads. *See Parler, A Conservative Twitter Clone, Has Seen Nearly 1 Million Downloads Since Election Day*, The Verge (Nov. 9, 2020), https://www.theverge.com/2020/11/9/21557219/parler-conservative-app-download-new-users-moderation-bias. This resulted in Parler rocketing to be "the #1 free app in the iOS App Store, up from #1,023" just a week earlier. *Id.* Likewise, in that same week the Parler app went from 486th to 1st in the Google Play rankings. *Id.* Not surprisingly, "the app was the 10th most downloaded social media app in 2020 with 8.1 million new installs." Jonathan Schieber, *Parler Jumps to No. 1 on App Store after Facebook and Twitter Ban Trump*, TechCrunch (Jan. 9, 2021),

VERIFIED COMPLAINT - 7



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

https://techcrunch.com/2021/01/09/parler-jumps-to-no-1-on-app-store-after-facebook-and-twitter-bans/.

18.    In 2021, this trend not only continued, it accelerated, thanks to Twitter's announcement two days ago that it would permanently ban President Trump from its platform. *Id.* On that day, last Friday, Parler saw installs increase in the United States by 355%. *Id.* After Twitter's announcement, conservative politicians and media figures began encouraging their followers to switch to Parler. *See* Yelena Dzhanova, *Top Conservative Figures are Tweeting to Advertise their Parler Accounts After Trump was Permanently Banned from Twitter*, Business Insider (Jan. 9, 2021), https://www.businessinsider.com/top-conservatives-moving-to-parler-after-trumps-ban-from-twitter-2021-1. *See also* Joseph A. Wulfsohn, *Conservatives Flee to Parler Following Twitter's Permanent Suspension of Trump*, Fox News (Jan. 9, 2021), https://www.foxnews.com/media/conservatives-join-parler-twitter-trump-ban.

19.    Speculation began to mount that President Trump would likewise move to Parler. *Id.* Given the close to 90 million followers the President had on Twitter, this would be an astronomical boon to Parley and a heavy blow to Twitter. *See Donald J. Trump (@realDonaldTrump) Twitter Statistics*, Socialbakers, https://www.socialbakers.com/statistics/twitter/profiles/detail/25073877-realdonaldtrump.

VERIFIED COMPLAINT - 8



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

20.     Given the context of Parler's looming threat to Twitter and the fact that the Twitter ban might not long muzzle the President if he switched to Parler, potentially bringing tens of millions of followers with him, AWS moved to shut down Parler. *See id.*

21.     Yesterday evening, at 6:07 pm PST, web news site BuzzFeed posted an article with screenshots of a letter from AWS to Parler, informing Parler that its account would be suspended at 11:59 pm PST on Sunday, less than thirty hours later. *See* John Paczkowski, *Amazon Is Booting Parler Off of Its Web Hosting Service*, BuzzFeed (Jan. 9, 2021), https://www.buzzfeednews.com/article/johnpaczkowski/amazon-parler-aws. Strangely, the article with the letter was posted before Parler itself received the letter in an email, received at 7:19 pm PST, over an hour after the BuzzFeed article went online, meaning AWS leaked the letter to BuzzFeed before sending it to Parler. *See* Exhibit A.

22.     Last evening, the Associated Press reported that "Parler may be the leading candidate" for President Trump after his Twitter ban as "[e]xperts had predicted Trump might pop up on Parler . . . ."). Frank Bajak, *Squelched by Twitter, Trump Seeks New Online Megaphone*, Associated Press (Jan. 9, 2021), https://apnews.com/article/donald-trump-politics-media-social-media-coronavirus-pandemic-f5b565ca93a792640211e6438f2db842. However, the AP also observed

VERIFIED COMPLAINT - 9



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

that "Amazon struck [a] blow Saturday [against the chances of Trump adopting the platform], informing Parler it would need to look for a new web-hosting service effective midnight Sunday." *Id.*

23.      This death blow by AWS could not come at a worse time for Parler—a time when the company is surging with the potential of even more explosive growth in the next few days. Worse than the timing is the result—Parler has tried to find alternative companies to host it and they have fallen through. It has no other options. Without AWS, Parler is finished as it has no way to get online. And a delay of granting this TRO by even one day could also sound Parler's death knell as President Trump and others move on to other platforms.[1] It is no wonder, then, that competitor Twitter's CEO has heartily endorsed efforts to remove Parler from the public sphere. *See* Kevin Shalvey, *Parler's CEO John Matze Responded Angrily After Jack Dorsey Endorsed Apple's Removal of the Social Network Favored by Conservatives,* Busines Insider (Jan. 10, 2021), https://www.businessinsider.com/parler-john-matze-responded-angrily-jack-dorsey-apple-ban-2021-1.

_____

[1] AWS indefinitely suspending Parler's account is categorically different than Google or Apple dropping Parler from their app stores. In the instance of the latter, existing Parler users can still use its app—it's just harder for Parler to sign up new users. But with AWS's move, both existing users and new users are completely prevented from using the app until Parler can find some other service to replace AWS.  Users are also prevented from using Parler's website, which is likewise dependent upon AWS.

VERIFIED COMPLAINT - 10



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

24.     Parler's rival social media apps, such as conservative-oriented Gab or conservative media Rumble, are also experiencing record growth right now. *See* Isaac & Browning, *Fact-checked on Facebook and Twitter*, supra. If Parler is not available, people will turn to alternatives, or perhaps return to Twitter or Facebook. What is more, Parler's current users are likely to leave and go to another platform if Parler is down for an indefinite period. And once those users have begun to use another platform, they may not return to Parler once it's back online.

25.     And by silencing Parler, AWS silences the millions of Parler users who do not feel their free speech is protected by Twitter or other social media apps.

26.     What is more, by pulling the plug on Parler but leaving Twitter alone despite identical conduct by users on both sites, AWS reveals that its expressed reasons for suspending Parler's account are but pretext. In its note announcing the pending termination of Parler's service, AWS alleged that "[o]ver the past several weeks, we've reported 98 examples to Parler of posts that clearly encourage and incite violence." Exhibit A. AWS provide a few examples, including one that stated, "How bout make them hang?", followed by a series of hashtags, including "#fu-- mikepence." *Id*.

27.     AWS further stated to Parler that the "violent content on your website . . . violates our terms." *Id*. Because, AWS declared, "we cannot provide services to a customer that is unable to effectively identify and remove content that

VERIFIED COMPLAINT - 11



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

encourages or incites violence against others," AWS announced the pending termination of Parler's account. *Id.*

28.     However, the day before, on Friday, one of the top trends on Twitter was "Hang Mike Pence," with over 14,000 tweets. *See* Peter Aitken, *'Hang Mike Pence' Trends on Twitter After Platform Suspends Trump for Risk of 'Incitement of Violence'*, Fox News (Jan. 9, 2021), https://www.foxnews.com/politics/twitter-trending-hang-mike-pence. And earlier last week, a Los Angeles Times columnist observed that Twitter and other social media platforms are partly culpable for the Capital Hill riot, by allowing rioters to communicate and rile each other up. *See* Erika D. Smith, *How Twitter, Facebook are Partly Culpable for Trump DC Riot*, LA Times (Jan. 6, 2021), https://www.latimes.com/california/story/2021-01-06/how-twitter-facebook-partly-culpable-trump-dc-riot-capitol. Yet these equivalent, if not greater, violations of AWS's terms of service by Twitter have apparently been ignored by AWS.

29.     AWS knew its allegations contained in the letter it leaked to the press that Parler was not able to find and remove content that encouraged violence was false—because over the last few days Parler had removed everything AWS had brought to its attention and more. Yet AWS sought to defame Parler nonetheless. And because of AWS false claims, leaked to the public, Parler has not only lost current and future customers, but Parler has also been unable to find an

VERIFIED COMPLAINT - 12



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

alternative web hosting company. In short, AWS false claims have made Parler a pariah.

### Count One: Sherman Act, Section 1

### AWS is prohibited from contracting or conspiring to restrain trade or commerce.

30.     Parler restates, re-alleges, and incorporates by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

31.     Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce . . ." 15 U.S.C. § 1. "To state a claim under Section 1, a plaintiff must allege facts that, if true, will prove: (1) the existence of a conspiracy, (2) intention on the part of the co-conspirators to restrain trade, and (3) actual injury to competition." *Coalition For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501-02 (9th Cir. 2010).

32.     Less than a month ago, AWS and Parler's competitor, Twitter, entered into a multi-year deal. Late Friday evening, Twitter banned President Trump from using its platform, thereby driving enormous numbers of its users to Parler. Twenty-four hours later, AWS announced it would indefinitely suspend Parler's account.

33.     AWS's reasons for doing so are not consistent with its treatment of Twitter, indicating a desire to harm Parler.

VERIFIED COMPLAINT - 13



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

34.   By suspending Parler's account, AWS will remove from the market a surging player, severely restraining commerce in the microblogging services market.

35.   AWS's actions violate the Sherman Act, 5 U.S.C. § 1.

36.   Parler is entitled to injunctive relief.

### Count Two: Breach of Contract

**AWS breached its contract with Parler by not providing thirty days' notice before terminating its account.**

37.   Parler restates, re-alleges, and incorporates by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

38.   Under Washington law, "[a] breach of contract is actionable only if the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant." *See Northwest Independent Forest Mfrs. v. Dept. of Labor and Industries*, 78 Wn. App. 707, 712, 899 P.2d 6 (1995).

39.   The AWS Customer Agreement with Parler allows either party to terminate the agreement "for cause if the other party is in material breach of this Agreement and the material breach remains uncured for a period of 30 days from receipt of notice by the other party." Exhibit B.

40.   On January 8, 2021, AWS brought concerns to Parler about user content that encouraged violence. Parler addressed them, and then AWS said it was "okay" with Parler.

VERIFIED COMPLAINT - 14



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

41.  The next day, January 9, 2021, AWS brought more "bad" content to Parler and Parler took down all of that content by the evening.

42.  Thus, there was no uncured material breach of the Agreement for 30 days, as required for termination.

43.  Further, while AWS used the term "suspension" in its notice to Parler, it stated that it would "ensure that all of your data is preserved for you to migrate to your own servers, and will work with you as best as we can to help your migration." Exhibit A. This is not action AWS would take for a temporary suspension, but rather for a permanent termination. Thus, whatever words AWS used, it was terminating the Agreement with Parler.

44.  This termination will immediately make it impossible for Parler to have an online presence for at least a week, depriving Parler's current users of any use of the app and website, and completely preventing any new users from downloading and using the app, or the website.

45.  Thus, AWS will have breached its contract with and harmed Parler. Further, lost future profits in this case are difficult to calculate due to the rapidly increasing nature of Parler's user base. That's because "[t]he usual method for proving lost profits is to establish profit history." *Tiegs v. Watts,* 135 Wash.2d 1 (1998). But that history will, at best, undervalue the future given how quickly Parler is growing. And at worst, Parler will get nothing as "[l]ost profits cannot be

VERIFIED COMPLAINT - 15



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

recovered where they are speculative, uncertain and conjectural" because "[t]he amount of lost profits must be established with reasonable certainty." *Id.* Thus, money damages may not be available, but at the least are insufficient to make Parler whole.

46.   Parler is entitled to injunctive relief.

### Count Three: Tortious Interference with a Contract or Business Expectancy

**By terminating Parler's account, AWS will intentionally interfere with the contracts Parler has with millions of its present users, as well as with the users it is projected to gain this week.**

47.   Parler restates, re-alleges, and incorporates by reference each of the allegations set forth in the rest of this Complaint as if fully set forth herein.

48.   In Washington, "[t]he elements of tortious interference with a contract or expectancy are: (1) the existence of a valid contractual relationship or business expectancy; (2) the defendant's knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) the defendant's interference for an improper purpose or by improper means; and (5) resulting damage." *Koch v. Mutual of Enumclaw Ins. Co.*, 108 Wn. App. 500, 506, 31 P.3d 698 (2001).

49.   Parler currently has over 12 million users under contract. It expects to add millions more this week given its growth the last few days and the growing voice of conservatives encouraging their Twitter followers to switch to Parler.

VERIFIED COMPLAINT - 16



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

50.   AWS is aware of Parler's user numbers and current trends. AWS also knew that Parler was negotiating with it to increase its server capacity given this ongoing and expected growth. AWS also knew of public speculation that Trump, with his nearly 90 million Twitter followers, was going to switch to Parler, likely bringing many of those followers with him. Finally, AWS also knew from public statements that Parler was about to go to the market to raise money.

51.   AWS intentionally will interfere with Parler's current contracts and future expected customer relationships by terminating Parler's Agreement with it under the pretext that Parler was in violation of that contract when AWS knew Parler was not in violation (and when Twitter was engaging in identical conduct but AWS did not terminate its contract with Twitter).

52.   Parler will be severely damaged financially and reputationally if it must go offline Sunday at midnight because AWS terminates Parler's account. As noted above, given the speculative nature of Parler's financial and reputational damages, money damages will not make it whole.

53.   Therefore, Parler is entitled to injunctive relief.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

A. Grant Parler's motion for a Temporary Restraining Order and order AWS to maintain Parler's account until further notice from this Court, and to refrain from

VERIFIED COMPLAINT - 17



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

1 | suspending, terminating or failing to provide any services previously provided
2 |
3 | under Parler's customer agreement with AWS.
4 |     B. Grant Parler damages, including trebled damages, in an amount to be
5 | determined at trial.
6 |
7 |     C. Grant Parler such other relief as the Court deems just and proper.
8 |
9 |         ///
10 |
11 |        ///
12 |
13 |        ///
14 |        ///
15 |
16 |
17 |    Dated: January 10, 2021.
18 |
19 |                              Respectfully submitted,
20 |
21 |                              /s David J. Groesbeck
22 |                              WSBA No. 24749
23 |                              DAVID J. GROESBECK, P.S.
24 |                              1716 Sylvester St. SW
25 |                              Olympia, WA  98501
26 |                              (509) 747-2800
27 |                              david@groesbecklaw.com
28 |
29 |                              621 W. Mallon Ave., Suite 507
30 |                              Spokane, WA 99201
31 |
32 |                              *Counsel for Plaintiff*

VERIFIED COMPLAINT - 18



David J. Groesbeck, P.S.
Attorney and Counselor
1716 Sylvester St. SW
Olympia, Washington 98501
(509) 747-2800

## VERIFICATION

I, John Matze, say that I am the Chief Executive Officer of Parler LLC in the case captioned *Parler LLC v. Amazon Web Services, Inc.*, in the U.S. District Court for the Western District of Washington, and have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and to those allegations of which I have personal knowledge, I know them to be true. As to those allegations of which I do not have personal knowledge, I believe them to be true.

Dated: January 10, 2021

Verified by:

John Matze
Chief Executive Officer, Parler LLC